UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICHAEL ROBERT WISE,

    Plaintiff,

v.                                   CAUSE NO. 3:20-CV-95-DRL-MGG

MATTHEW HASSEL and BEAU
HOLCOMB,

    Defendants.

OPINION AND ORDER

Michael Robert Wise, a prisoner without a lawyer, is proceeding in this case "on a Fourteenth Amendment claim against Sheriff Hassel and Jailer Holcomb for money damages for allegedly subjecting him to overcrowded conditions since July 2019[.]" ECF 8 at 2. Specifically, Mr. Wise alleged in his complaint that, while he was housed in Marshall County Jail as a pretrial detainee, Sheriff Hassell authorized Jailer Holcomb to place a fifth inmate in the four-man cells, which (1) created a trip and fire hazard; (2) forced some inmates to sleep on the ground; and (3) forced inmates to eat on the floor or toilet due to a lack of available seating. On April 30, 2021, the defendants moved for summary judgment. With the motion, the defendants provided Mr. Wise the notice required by N.D. Ind. L.R. 56-1(f). Attached to the notice were copies of Federal Rule of Civil Procedure 56 and Northern District of Indiana Local Rule 56-1.

Pursuant to Local Rule 56-1(b)(1), "[a] party opposing [a summary judgment] motion must, within 28 days after the movant serves the motion, file and serve (A) a

response brief; and (B) any materials that the party contends raise a genuine dispute." After the time to respond expired, the court granted Mr. Wise an extension until August 4, 2021, to file a response to the summary judgment motion. ECF 25. Mr. Wise did not file a response by this deadline. The defendants then refiled their memorandum in support of summary judgment to correct a filing error with one of their exhibits.[1] ECF 27. Because the defendants refiled their memorandum, the court again extended the deadline for Mr. Wise to respond to the summary judgment motion to October 19, 2021. ECF 28. The court cautioned Mr. Wise that, if he did not respond by that date, the summary judgment motion may be considered without his response. *Id*. This deadline passed nearly two months ago, but Mr. Wise has not responded. Therefore the court will now rule on the defendants' summary judgment motion.

## FACTS

The defendants submit affidavits, attesting to the following information.[2] The Marshall County Jail was constructed in 2008 and has 230 permanent beds. ECF 22-1 at 1. Starting in 2018, Marshall County Jail's average daily population began to rise sharply, raising concerns about potential overcrowding. *Id.* at 2. Sheriff Hassell alerted and met with various county officials to discuss potential remedies to bring the jail population

---

[1] The defendants mistakenly filed a duplicate copy of Sheriff Hassel's affidavit instead of a copy of Jailer Holcomb's affidavit. *See* ECF 22-2. They refiled their memorandum to remedy this filing error. *See* ECF 27-2.

[2] Because Mr. Wise did not respond to the summary judgment motion, the Court accepts the facts alleged in the defendants' affidavits as undisputed. *See* Fed. R. Civ. P. 56(e) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . ..")

2

down. *Id.* Beginning in late 2018, Sheriff Hassell and county officials discussed and implemented various remedies to reduce the jail population, including: (1) making arrangements to transfer inmates to a different county; (2) expediting the implementation of Criminal Rule 26 for assessment and release of pretrial detainees; (3) reducing sentences of currently incarcerated county inmates; (4) adding additional deputy prosecutors; (5) adding a fourth court to the County; and (6) constructing an addition to the Marshall County Jail that would house an additional 300 inmates. *Id.* at 2, 5. Many of these options could not be implemented immediately and required various steps and the allocation of resources to accomplish. *Id.* at 2-3.

While the jail worked toward implementing these remedies, the average daily population continued to rise in 2019. *Id.* at 3-5. In January 2019 the average daily population was 218.5; in February 2019 the average daily population was 232.1; in March 2019 the average daily population was 240.7; in April 2019 the average daily population was 232.4; in May 2019 the average daily population was 238.3; in June 2019 the average daily population was 247.3, at which point, the permanent bed capacity was considered to be exceeded at the facility; in July 2019 the average daily population was 260.0; in August 2019 the average daily population was 291.6; in September 2019 the average daily population as 285.6; in October 2019 the average daily population was 287.3; in November 2019 the average daily population was 272.3; and in December 2019 the average daily population was 254.7. *Id.* at 3-4.

During late 2019, while the remedies to reduce the jail population were being increasingly implemented, the average daily population at Marshall County Jail began to

3

trend downward. *Id.* at 5. In January 2020 the average daily population was 249.7; in February 2020 the average daily population was 233.9; in March 2020 the average daily population was 210.9; in April 2020 the average daily population was 183.5; in May 2020 the average daily population was 151.6; in June 2020 the average daily population was 151.9; in July 2020 the average daily population was 151; and in August 2020 the average daily population was 161. *Id.* at 5-6. The Marshall County Jail population has remained below 230 since February 24, 2020. *Id.* at 6.

During the period of overcrowding at Marshall County Jail, jail officials made several temporary adjustments to the facility to house the surplus of inmates. In June 2019, Chief Jail Officer Holcomb started adding floor space bed assignments by placing one additional inmate in the four-man cells. ECF 27-2 at 2. Officer Holcomb determined adding an additional inmate to the four-man cells would be the safest option because those cells have the largest amount of floor space and the inmates would be secured during lockdown hours. *Id.* If an inmate was assigned to the floor in a four-man cell, he was given a mat he could place anywhere in the cell. *Id.* Most inmates placed the mat in the center floor space between the permanent bunks, which lessened the space available for the inmates in the bunks but did not entirely obstruct their path. *Id.* at 3. Moreover, inmates in the permanent bunks were free to get out of their beds at the head or foot, which eliminated the need to navigate around the inmate assigned to the floor space. *Id.* Inmates in general population were free to spend most hours of the day out of their cell in the dayroom. *Id.*

In the summer 2019, Officer Holcomb created additional sleeping space by adding additional bunks in the inmate worker dorm style pod and turning the recreation room into a temporary housing unit. *Id.* at 4. In September 2019, Officer Holcomb ordered, received, and distributed additional portable bunks. *Id.* Because each pod contains the same number of dayroom seats as permanent bunks, the addition of one extra inmate in each four-man cell resulted in a shortage of dayroom seating. *Id.* As a result, when the dayroom had no available seats, the inmates were allowed to sit on their bunks, stand at the tables, or wait for a space to open up at one of the dayroom tables to eat their meals. *Id.* No inmate was ever forced to sit on the floor or on the toilet to eat. *Id.*

Mr. Wise was classified and moved to general population on December 13, 2018, and assigned to a bunk in 1470 Pod. *Id.* at 1, 5. A fifth inmate was assigned to Mr. Wise's cell around July 17, 2019. *Id.* at 5. Between October 5, 2019 and November 13, 2019, Mr. Wise was assigned to the trustee dorm, which was not overcrowded. *Id.* On November 13, 2019, Mr. Wise lost trustee status and was reassigned to a bunk assignment in 1470 Pod. *Id.* Mr. Wise remained in 1470 Pod until February 16, 2020, when he was sent to the disciplinary housing pod. *Id.* Mr. Wise returned to general population around March 1, 2020, when he was reassigned to 1470 Pod. *Id.* The jail was not over capacity for the remainder of Mr. Wise's incarceration. *Id.*

## ANALYSIS

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such

5

that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR Corp.*, 573 F.3d 401, 407 (7th Cir. 2009). Summary judgment "is the put up or shut up moment in a lawsuit[.]" *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

Because Mr. Wise filed this action as a pretrial detainee, the court must assess his claims under the Fourteenth Amendment instead of the Eighth Amendment. *See Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849, 856 (7th Cir. 2017). "[T]he Fourteenth Amendment's Due Process Clause prohibits holding pretrial detainees in conditions that amount to punishment." *Id.* (quotation marks omitted). "A pretrial condition can amount to punishment in two ways: first, if it is imposed for the purpose of punishment, or second, if the condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the government action is punishment." *Id.* A pretrial detainee can "prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Kingsley v.*

6

*Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (extending *Kingsley's* objective inquiry to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees).

Mr. Wise argues the defendants violated his rights by placing a fifth inmate in the four-person cells, which (1) created a trip and fire hazard; (2) forced some inmates to sleep on the ground; and (3) forced inmates to eat on the floor or toilet due to a lack of available seating. ECF 5 at 2. The defendants argue summary judgment should be granted in their favor because their efforts to address the overcrowding of the jail were objectively reasonable in light of the surrounding circumstances. ECF 22 at 18-22. Specifically, they argue they reasonably accommodated all inmates while taking affirmative steps to reduce the jail population. *Id.* at 20-22.

Here, the jail's decision to place a fifth inmate in each four-person cell was rationally related to its objective of safely housing the surplus of inmates while the jail enacted large-scale remedies to reduce the jail population. *See Kingsley*, 135 S. Ct. at 2473. Mr. Wise offers no evidence the defendants' conduct was punitive, arbitrary, or purposeless. *See Mulvania*, 850 F.3d at 856. Moreover, Mr. Wise offers no evidence his housing arrangement created a trip or fire hazard, and the defendants provided attestations and photographs demonstrating the inmates still had room to maneuver in the four-man cells with the addition of the fifth bunk. ECF 27-2 at 8-15. Further, Mr. Wise offers no evidence he ever received a floor assignment, and any assertion that inmates were forced to sleep by the toilet on the floor are refuted by the defendants' photographic evidence showing that portable bunks and floor mats could be placed the same distance

away from the toilets as the permanent bunks. *See id.* Last, Mr. Wise offers no evidence he was forced to sit on the toilet to eat his meals, and the defendants attest Mr. Wise was not instructed or forced to eat his meals while sitting on the toilet and was free to eat at his bunk, stand at a table, or wait for a space to open up at one of the dayroom tables to eat his meals. ECF 27-2 at 4. Thus, there is no evidence by which a reasonable jury could conclude the defendants violated Mr. Wise's Fourteenth Amendment rights by placing a fifth inmate in the four-man cells.

For these reasons, the court:

(1) GRANTS the defendants' summary judgment motion (ECF 21); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Michael Robert Wise.

SO ORDERED.

December 14, 2021               *s/ Damon R. Leichty*
                                Judge, United States District Court